Norman E. Ritter and Cordelia S. Ritter v. Commissioner. Everett C. Weller and Marion S. Weller v. Commissioner. Robert E. Miller and Jeanne M. Miller v. Commissioner.
Ritter v. Commissioner
Docket Nos. 4299-62, 4308-62 and 626-63.
United States Tax Court
T.C. Memo 1964-216; 1964 Tax Ct. Memo LEXIS 122; 23 T.C.M. (CCH) 1302; T.C.M. (RIA) 64216; August 17, 1964
Norman A. Peil, Jr., Alpha Bldg., Easton, Pa., for the petitioners in Docket Nos. 4299-62 and 4308-62. Roger L. Davis, for the petitioners in Docket No. *123 626-63. William F. Fallon, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for 1957 of $1,925.10 against the Ritters, $4,221.68 against the Wellers and 42,541.82 against the Millers. The question for decision is whether amounts received by Miller in 1957 under an agreement terminating his 20 percent interest in Weller Manufacturing Company, a partnership, are taxable to him as ordinary income rather than long-term capital gain and whether those same amounts are deductible or excludable in determining the Ritter and Weller shares of the distributable net income of that partnership. The Commissioner has held against all parties but conceded that his action was inconsistent and taken to protect the revenues. He now argues in brief against Miller and for Ritter and Weller. Findings of Fact The petitioners are three married couples who filed joint returns for 1957. The Ritters and Wellers filed their returns with the district director of internal revenue at Scranton, Pennsylvania. The Millers filed their return with the district director of internal revenue at Jacksonville, Florida. Weller *124 Manufacturing Company, hereafter called the partnership, was a general partnership organized in 1945 and engaged in the manufacture and sale of soldering tools. Miller had acquired a 20 percent interest in the partnership by May 30, 1948 and it became a limited partnership. Petitioners Ritter and Weller were partners at all times material hereto. The partnership used an accrual accounting system and a fiscal year ended April 30. Miller had been trying to sell his interest in the partnership. He had not worked for the partnership since 1950 but attended meetings of the partners. He discussed a possible sale with Carl E. Weller, a general partner, late in 1954. Weller then discussed the matter with the other partners and Miller employed a firm of accountants to examine the partnership books and records and advise him in regard to the proposed sale. Francis Murphey represented the accounting firm in this matter. Miller's capital investment on the partnership books on January 31, 1955 was $121,644.26. Included in the partnership assets at that time were patents carried at $1,422.17. This amount was later increased and Miller received a proportionate part of that increase. The partnership *125 was engaged at that time in a suit against two other companies in which it alleged infringement of its patents by those companies. The United States District Court for the Northern District of Illinois rendered an opinion on January 26, [in favor of the partnership; the Court of appeals for the Seventh Circuit remanded for new evidence by the defendants. That was the situation when Murphey was studying the value of Miller's interest in the partnership. Later, on April 13, 1955, the district court again held for the partnership; the defendants appealed and the court of appeals affirmed on March 30, 1956. The district court entered a final order on May 8, 1956 directing payment of $250,000 as compensatory damages covering the period from October 4, 1951 to April 30, 1956. This amount was paid, $100,000 in cash and $150,000 in six 6-percent notes. Miller, his attorney Briscoe and Murphey met with Carl E. Weller and other representatives of the partnership in Easton, Pennsylvania, on February 8, 1955 to agree upon terms for the termination of Miller's interest in the partnership through an agreement between Miller and the partnership. It was generally recognized at the meeting that *126 the value of the patents was too uncertain, due to the agreement, to be determined and that their book value should not be changed for the purpose of the agreement. It was also generally agreed that Miller should be paid the amount of his capital investment as shown on the partnership books. Miller wanted to share in the partnership earnings of the next five years and to retain his proportionate interest in the patents until the litigation terminated. Weller would not agree and the agreement was that Miller should be paid $75,000 payable $15,000 a year for the ensuing five years, regardless of earnings, and that he should have a 15 percent interest in any recovery from the infringement suit. A written agreement was prepared by Briscoe and executed by Miller and the partnership on February 25, 1955. The partnership paid Miller $121,007.17 on January 31, 1955 for his capital interest in the partnership. The vouchers attached to the checks showed, "Payment on account. Liquidation of partner's interest." No tax question with respect to that payment has arisen. Miller had been advised by Murphey that he would be subject to tax at ordinary income rates on the five fixed $15,000 payments; *127 Miller executed withholding Form W-4 dated December 31, 1956; the partnership received the form, withheld tax on the first $15,000 payment and gave Miller a check for the balance of $12,816 on February 1, 1956. Miller requested that the last three payments be accelerated and the partnership's obligation was satisfied by a payment of $15,000 on February 1, 1957 and one of $43,134.12 on April 25, 1957, representing the calculated discounted third, fourth and fifth payments. An error in calculating the discount was later discovered and Miller returned $1,706.76 to the partnership in May 1957. The partnership deducted as an expense $56,427.36 on its return for its fiscal year ended April 30, 1957, representing the net amount it paid to Miller in final satisfaction of the five annual $15,000 payments. The Commissioner, in determining the deficiencies against Ritter and Weller, added $58,134.12 to partnership income, as if that amount had been deducted. Miller's portion of the recovery on the infringement suit was paid to him by the partnership as follows: 5/22/56
15% of cash payment
$15,000.00
11/ 2/56
15% of $25,000 note plus
interest
4,312.50
4/25/57
15% of final settlement
of $125,000 notes plus
interest
19,179.69
*128 The amounts paid Miller for his share of the infringement suit recovery in its fiscal year ended April 30, 1957 were deducted by the partnership in computing partnership distributable income. The Commissioner, in determining the deficiencies against Ritter and Weller added those amounts to partnership income. The Commissioner, in determining the deficiency against the Millers, added $94,919.55 to reported income. He explained that it represented unreported partnership income consisting of $15,000 paid on February 1, 1957 and $41,427.36 (net) paid on April 25, 1957, both on account of and completing the five $15,000 annual fixed payments and $15,000 paid May 26, 1956, $4,312.50 paid on November 20, 1956 (both erroneously reported on the 1956 return) and $19,179.69 paid on April 25, 1957, the latter three representing Miller's share of the recovery in the infringement suit, some of which he had reported as long-term capital gain. All stipulated facts, including stipulated exhibits, are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner, in his briefs, agrees with the contentions of Ritter and Weller and argues with them that the payments to Miller *129 made by the partnership in fulfillment of its agreement to pay him five fixed or guaranteed annual payments of $15,000 each were taxable to him as ordinary income under sections 736(a)(2), 707(c) and 61(a) of the 1954 Code, and that Miller's share of the compensatory damages received under the court's order was not capital gain from his sale of an asset but was taxable as ordinary income since it was his share of partnership income paid to the partnership for loss of earnings through patent infringement while he was a partner. The partnership did not sell the patents but, instead, retained them. The amount which Miller received for his capital investment was all it was agreed he was to receive for giving up his partnership interest in the patents. He did not participate in any capital transaction in relation to the patent infringement suit. That suit was based upon a loss of partnership earnings during the period the competitors were selling goods which were protected by the patents. No sale of the patents was in any way involved. Miller was a partner during the period of infringement and the share he received of the $250,000 judgment was his share of distributable partnership income, *130 received to compensate it for loss of earnings during that period. The five $15,000 annual payments which Miller was to receive in liquidation of his 20 percent interest in the partnership were paid "in liquidation of the interest of a retiring partner." The agreement made no mention of good will. The payments were not for the surrender of any tangible asset or for the patents, but were to cover an intangible asset. They were "determined without regard to the income of the partnership." They were, therefore, guaranteed payments within the meaning of the cited provisions of the Code and taxable to Miller as ordinary income. V. , affd. ; . The Commissioner conceded that receipts from the infringement suit could be spread back under section 1304. Decisions will be entered under Rule 50.